UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

VIVIAN HILL ANN,

                        Plaintiff,

-against-

SUSAN WIVIOTT, Bridge Inc.; THE BRIDGE INC.; QUEENS KENDRA SHERIFFS; NYC MENTAL HEALTH AND HYGIENE,

                        Defendants.

1:21-CV-9210 (LTS)

ORDER TO AMEND

---

LAURA TAYLOR SWAIN, Chief United States District Judge:

      Plaintiff Vivian Hill Ann, who is appearing *pro se*, filed this action raising claims under the Court's federal question jurisdiction. She asserts claims of "discrimination of race Afro-American disability, whistleblower protection, deni[al] [of] medical records, HIPAA violation since 2017, retaliations for filing civil rights complaint, suit, domestic terrorism of break-ins [and] destruction of private property." (ECF 2, at 2.) She sues: (1) Susan Wiviott, the Chief Executive Officer of the Bridge, Inc.; (2) the Bridge, Inc.; (3) "Queens Kendra Sheriffs," and (4) the New York City Department of Health & Mental Hygiene. In her complaint, Plaintiff asks for: (1) damages, (2) the appointment of counsel, (3) "the attorney to complete the complaint [and] cause[] of action documents," and (4) the Court to issue a temporary restraining order "to stop the domestic terrorism violence against [her]." (*Id.* at 6.) Plaintiff has also filed an application for a temporary restraining order and a preliminary injunction in which she asks the Court to enjoin the defendants from "putting [her] life [and] limb in mental jeopardy, destroying her door and window and leaving the open [and] unprotected household property exposed to further burglaries." (ECF 3, at 1.) In addition, Plaintiff has filed an application for the Court to request *pro bono* counsel. (ECF 4.)

By order dated November 10, 2021, the Court granted Plaintiff's request to proceed without prepayment of fees, that is, *in forma pauperis* (IFP). For the reasons set forth below, the Court denies Plaintiff's application for a temporary restraining order and a preliminary injunction, as well as her application for the Court to request *pro bono* counsel, but grants Plaintiff leave to file an amended complaint within 60 days of the date of this order.

## STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

The Supreme Court of the United States has held that, under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged

misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.* But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.* at 679.

## BACKGROUND

Plaintiff lives in New York, New York, and asserts that the events giving rise to her action occurred there. She alleges the following: On July 3, 2019, Jerry Gloster, a social worker employed by the Bridge, Inc. ("the Bridge"), assaulted her by forcing pills into her mouth and making her swallow them. As a result of Gloster's actions, Plaintiff went unconscious, fell, and hit her head, "which caused brain damage from the fall [and from] the overdose of drugs." (ECF 2, at 6.)

Members of the New York City Sheriff's Office who are located in Queens have repeatedly broke down the door to Plaintiff's home, taken Plaintiff into custody, and hospitalized her. The New York City Department Health & Mental Hygiene, the Bridge, and "the Queens Sheriffs" have attacked her. (*Id.* at 5.) Plaintiff fears for her life because the defendants have:

> assaulted, harassed, denied [Plaintiff her] civil [and] constitutional rights, [and] retaliated against [her]. [Plaintiff has] private medical doctors who are trying to treat [her] for . . . neurological [and] medical conditions. The defendants refused to give [her] medical records violating [the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and] interfer[e] with bogus [and] wrong diagnoses . . . .

(*Id.* at 5-6.)

Plaintiff has attached to her complaint a November 4, 2021, letter to "Undersheriff Bevelyn Barkley," of the "Queens Sheriff Office"; the letter was signed by Plaintiff and her

3

husband, Harry Warren. (*Id.* at 10-15.) In the letter, Plaintiff and Warren allege the following: On November 1, 2021, Plaintiff was "apprehended . . . by . . . Queens Kendra Sheriffs[,] . . . taken to Mount Sinai St. Luke's Hospital," and a deputy sheriff told Warren that he could not speak to Plaintiff and that Plaintiff "should not listen to" Warren. (*Id.* at 10.) The "Sheriffs used excessive force and broke [Plaintiff and Warren's] door again," and the Bridge "used the [Queens Kendra Sheriffs] as a paramilitary to terrorize" Plaintiff and Warren. (*Id.*) The Bridge "complained [that Plaintiff] was not getting admitted at the hospital for the doctor evaluations – then sent the sheriffs a second and third time to apprehend and force their bias. It was (not) a matter of a need for [Plaintiff's] hospitalization but their vendetta to being sued and punishment." (*Id.* at 11.) Plaintiff "just got discharged from Mount Sinai Hospital West a couple of weeks ago. Act Team visited her, and she got a clear bill of health. Two weeks later, they lie[d] [that] they had not seen [Plaintiff] for months, mislead and cooping [sic] the sheriffs." (*Id.*) When deputy sheriffs brought Plaintiff to a hospital on November 1, 2021, she was released within hours. (*Id.* at 12.)

        The Bridge "is in noncompliance with the safeguards listed in" Section 9.60 of the New York Mental Hygiene Law. (*Id.*) The Bridge "had (no valid) court order during most of the incidents of summoning sheriffs. They falsely allege[d] there was a court order as an underlying basis." (*Id.* at 13.) Deputy sheriffs have been taking Plaintiff into custody and hospitalizing her "without seeking valid courts orders . . . since February 2021." (*Id.*) In the summer of 2021, deputy sheriffs carried a court order "that expired in the fall of 2020, and was not an order for AOT but a date for a hearing." (*Id.* at 14.) The defendants "illegally got any civil court orders from the NYS Court after October 27." (*Id.* at 15.)

4

## DISCUSSION

Because Plaintiff asserts that the defendants have violated her federal constitutional rights, the Court construes Plaintiff's complaint as asserting claims under 42 U.S.C. § 1983.[1]

### A.   State action, the Bridge, and Wiviott

To state a claim under Section 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988): *Meadows*, 963 F.3d at 243 ("State action [for the purpose of Section 1983 liability] requires *both* . . . the exercise of some right or privilege created by the State . . . *and* the involvement of a person who may fairly be said to be a state actor.") (internal quotation marks and citation omitted, italics in original). Private entities are therefore not generally considered to be state actors. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties.").

The activity of a private entity may be considered to be state action for the purpose of Section 1983 liability, however, in the following three situations: (1) when the entity acts using the coercive power of the state or is controlled by the state (the "compulsion test"); (2) when the

---

[1] To the extent that Plaintiff asserts claims under HIPAA, the Court dismisses those claims for failure to state a claim on which relief may be granted, *see* 28 U.S.C. § 1915(e)(2)(B)(ii), because there is no private right of action under HIPAA, *Meadows v. United Servs., Inc.*, 963 F.3d 240, 244 (2d Cir. 2020). This is not the first time that a federal district court has dismissed HIPAA claims brought by Plaintiff against the Bridge. *Hill v. Bridge, Inc.*, 1:21-CV-4250, at 5 (E.D.N.Y. July 30, 2021) (dismissing action for lack of subject matter jurisdiction with leave to amend; judgment dismissing action for lack of subject matter jurisdiction entered Oct. 5, 2021).

5

state provides significant encouragement to the entity, the entity willfully participates in joint activity with the state, or the entity's functions are entwined with state policies (the "joint action" or "close nexus" test); or (3) when the state has delegated a public function to the entity (the "public function" test). *See Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (citation omitted).

The fundamental question under each test is whether the private entity's challenged actions are "'fairly attributable'" to the state. *Id.* (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)). In analyzing whether a private entity acted as a state actor for the purpose of Section 1983 liability, a court must first "identify[] the specific conduct of which the plaintiff complains, rather than consider the general characteristics of the entity." *Id.* (internal quotation marks and citation omitted). The fact that an entity receives public funds does not turn private action into state action, and acts of private contractors do not become acts of the government because of the contractors' engagement in government contracts. *See Rendell-Baker*, 457 U.S. at 840-41. Furthermore, a private entity does not become a state actor merely by acting in accordance with state regulations. *See id.* at 841.

The Bridge and Wiviott are private entities, and Plaintiff has alleged no facts showing that those defendants acted as state actors. Because Plaintiff's allegations suggest that the Bridge and Wiviott may have been somehow involved with Plaintiff's involuntary hospitalizations pursuant to a state-court order, however, the Court grants Plaintiff leave to file an amended complaint in which she alleges facts showing that the Bridge and Wiviott acted as state actors with regard to the events alleged.

**B.     The New York City Department of Health & Mental Hygiene and the Bridge**

The Court must dismiss Plaintiff's claims against the New York City Department of Health & Mental Hygiene ("HMH") because an agency of the City of New York, such as HMH,

is not an entity that can be sued. N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007); *Barton v. Otsuka Pharm.*, No. 19-CV-4758, 2019 WL 2578136, at *2 (S.D.N.Y. June 21, 2019); *see also Emerson v. City of New York*, 740 F. Supp. 2d 385, 395 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited from suing a municipal agency.").

When a plaintiff sues a municipality, such as the City of New York, under Section 1983, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson,* 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 692 (1978))); *Cash v. Cnty. of Erie,* 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a claim under Section 1983 against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403 (1997) (internal citations omitted). The same is true with respect to claims brought under Section 1983 against a private institutional defendant that is alleged to be a state actor. *See Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408 (2d Cir. 1990) ("Private employers are not liable under § 1983 for the constitutional torts of their employees unless the plaintiff proves that

7

action pursuant to official . . . *policy* of some nature caused a constitutional tort.") (internal quotation marks and citations omitted, emphasis in original).

Plaintiff alleges no facts showing that a policy, custom, or practice of the City of New York or the Bridge (to the extent that the Bridge is a state actor) caused a violation of her federal constitutional rights. In light of Plaintiff's *pro se* status, however, the Court grants Plaintiff leave to file an amended complaint in which she names the City of New York as a defendant and alleges facts sufficient to state a claim against the City of New York under Section 1983. The Court also grants Plaintiff leave to file an amended complaint in which she names the Bridge as a defendant an alleges facts sufficient to state a claim against the Bridge under Section 1983.

**C.     Involuntary hospitalization**

The Court understands Plaintiff's complaint as asserting that, on multiple occasions, deputy sheriffs of the New York City Sheriff's Office broke open the door to Plaintiff's home, took custody of Plaintiff against her will, and hospitalized her. Involuntary hospitalization is a "massive curtailment of liberty" and, therefore, is not permissible without due process of law. *Vitek v. Jones*, 445 U.S. 480, 491-92 (1980) (internal quotation marks and citations omitted).

Section 9.60 of the New York Mental Hygiene Law (also known as "Kendra's Law") "was enacted to provide the state with a program through which it could better protect the safety of communities by assisting individuals with documented mental illness in managing their mental health." *Myers v. Sullivan*, No. 14-CV-7448, 2017 WL 5125767, at *4 (E.D.N.Y. Aug. 23, 2017), *report & recommendation adopted*, 2017 WL 5125526 (E.D.N.Y. Nov. 2, 2017). Kendra's Law:

> provides for an "assisted outpatient treatment" ("A.O.T.") program for individuals who have failed to comply with their prescribed mental health treatment and, as a result, pose a threat to themselves or the community. An individual may only be required to participate in an A.O.T. program on petition of the attending physician, and only after a court holds a hearing and finds that the individual

8

> circumstances meet the statutory requirements as enumerated under [N.Y. Mental Hyg. Law § 9.60(c)(1)-(7)]. Once the Court has ordered the individual to participate in an A.O.T. program, various hospital directors across the state are empowered to administer the program to individuals as required "to treat the person's mental illness and to assist the person in living and functioning in the community." Where an individual refuses to comply with an A.O.T. program, he or she may be involuntarily admitted to a hospital for immediate observation or longer term treatment on petition of the examining physician under the provisions of Kendra's Law and in conjunction with other provisions of the Mental Hygiene Law.

*Id.* (citations omitted). If a person refuses to comply with an A.O.T. program, an appropriate physician or other official may direct law enforcement officials, including members of a municipality's sheriff's office, to take custody of the person and transport him or her to a hospital for observation, care, and treatment for an initial period of up to 72 hours. N.Y. Mental Hyg. Law § 9.60(n).

A person subject to such a court order may petition the court to stay, vacate, or modify that order, N.Y. Mental Hyg. Law § 9.60(l), and may also seek further judicial review of that order, N.Y. Mental Hyg. Law §§ 9.35, 9.60(m). Courts that have adjudicated facial constitutional challenges to Kendra's Law have found that it complies with due process. *See e.g.*, *Myers*, 2017 WL 5125767, at *5 (citing cases); *Rollins v. Mental Health & Hosp.*, No. 16-CV-2855, 2016 WL 10570982, at *3 (S.D.N.Y. July 5, 2016); *Coleman v. State Supreme Court*, 697 F. Supp. 2d 493, 511 (S.D.N.Y. 2010).

Plaintiff seems to allege that, on multiple occasions, deputy sheriffs with the New York City Sheriff's Office broke down the door to her home, took her into custody, and hospitalized her without the legal authority to do so and in violation of Kendra's Law. She also suggests that they did so in some sort of coordination with the Bridge. Plaintiff's complaint is unclear, however, as to how Plaintiff was deprived of due process when deputy sheriffs took her into custody and hospitalized her. The Court therefore grants Plaintiff leave to file an amended

9

complaint in which she alleges facts sufficient to state a claim that she was deprived of due process when deputy sheriffs took her into custody and hospitalized her.

**D.      Personal involvement**

To state a claim under Section 1983, a plaintiff must allege facts showing an individual's direct and personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal quotation marks omitted). A defendant may not be held liable under Section 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights. *See Iqbal*, 556 U.S. at 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). Rather, "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official . . . ." *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020).

Plaintiff alleges that, on multiple occasions, deputy sheriffs with the New York City Sheriff's Office illegally took her into custody and hospitalized her. She does not, however, name as defendants those individual deputy sheriffs who took her into custody. The Court grants Plaintiff leave to file an amended complaint in which she names as defendants all the individuals who violated her constitutional rights with regard to the events asserted in her complaint, and alleges facts showing their personal involvement in the alleged constitutional violations. As described below, if Plaintiff does not know an individual defendant's name, she may identify the person as a "John Doe" or "Jane Doe" defendant.

**E.        Application for a temporary restraining order and a preliminary injunction**

To obtain immediate injunctive relief, a litigant must show the Court: (1) that she is likely to suffer irreparable harm and (2) either (a) a likelihood of success on the merits of her case or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in her favor. *See UBS Fin. Servs., Inc. v. W.V. Univ. Hosps., Inc.*, 660 F. 3d 643, 648 (2d Cir. 2011) (citation and internal quotation marks omitted); *Wright v. Giuliani*, 230 F.3d 543, 547 (2d Cir. 2000). Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."[2] *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (internal quotation marks and citation omitted).

Because of the deficiencies in Plaintiff's complaint discussed above, it is unclear whether it is likely that Plaintiff will succeed on the merits of her claims or whether there are sufficiently serious questions going to the merits of her claims to make them a fair ground for litigation and a balance of hardships tipping decidedly in her favor. The Court therefore denies Plaintiff's application for a temporary restraining order and a preliminary injunction.

**F.        Application for the Court to request *pro bono* counsel**

The factors to be considered in ruling on an indigent litigant's request for counsel include the merits of the litigant's case, the litigant's efforts to obtain a lawyer, and the litigant's ability to gather the facts and present her case if unassisted by counsel. *See Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989); *Hodge v. Police Officers,* 802 F.2d 58, 60-62 (2d Cir. 1986). Of these, the merits are "[t]he factor which command[s] the most attention." *Cooper*, 877 F.2d at

---

[2] "The standards for granting a temporary restraining order and a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure are identical." *See Tang Capital Partners, LP v. Cell Therapeutics, Inc.*, 591 F. Supp. 2d 666, 669-70 (S.D.N.Y. 2008) (internal quotation marks and citation omitted).

11

172. Because it is too early in the proceedings for the Court to assess the merits of this action, the Court denies Plaintiff's application for the Court to request *pro bono* counsel without prejudice to Plaintiff's filing another such application at a later date, after Plaintiff has complied with this order.

**LEAVE TO AMEND**

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "'should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state a valid claim under Section 1983 against the City of New York, the Bridge, Bridge employees, or members of the New York City Sheriff's Office, the Court grants Plaintiff 60 days' leave to file an amended complaint to detail her claims.

Plaintiff is granted leave to file an amended complaint to provide more facts about her claims. First, Plaintiff must name as the defendant(s) in the caption[3] and in the statement of claim those individuals who were allegedly involved in the deprivation of her federal rights. If

---

[3] The caption is located on the front page of the complaint. Each defendant must be named in the caption. Plaintiff may attach additional pages if there is not enough space to list all of the defendants in the caption. If Plaintiff needs to attach an additional page to list all defendants, she should write "see attached list" on the first page of the amended complaint. Any defendants named in the caption of the amended complaint must also be discussed in its statement of claim.

Plaintiff does not know the name of an individual defendant, she may refer to that individual as "John Doe" or "Jane Doe" in both the caption and the body of the amended complaint.[4] The naming of "John Doe" or "Jane Doe" defendants, however, does *not* toll the three-year statute of limitations period governing this action and Plaintiff shall be responsible for ascertaining the true identity of any "John Doe" or "Jane Doe" defendants and amending her complaint to include the identity of any "John Doe" or "Jane Doe" defendants before the statute of limitations period expires. Should Plaintiff seek to add a new claim or party after the statute of limitations period has expired, she must meet the requirements of Rule 15(c) of the Federal Rules of Civil Procedure.

In the "Statement of Claim" section of the amended complaint form, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant. If Plaintiff has an address for any named defendant, Plaintiff must provide it. Plaintiff should include all of the information in the amended complaint that Plaintiff wants the Court to consider in deciding whether the amended complaint states a claim for relief. That information should include:

a) the names and titles of all relevant people;

b) a description of all relevant events, including what each defendant did or failed to do, the approximate date and time of each event, and the general location where each event occurred;

c) a description of the injuries Plaintiff suffered; and

d) the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

---

[4] For example, such a defendant may be identified as: "Deputy Sherriff John Doe, who took Plaintiff into custody on January 1, 2020, at Plaintiff's home."

Essentially, Plaintiff's amended complaint should tell the Court: who violated her federally protected rights; how, when, and where such violations occurred; and why Plaintiff is entitled to relief.

Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wants to include from the original complaint must be repeated in the amended complaint.

## CONCLUSION

The Court dismisses Plaintiff's claims under HIPAA, as well as her claims under 42 U.S.C. § 1983 against the New York City Department of Health & Mental Hygiene. 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court also denies Plaintiff's application for a temporary restraining order and a preliminary injunction. (ECF 3.)

The Court further denies Plaintiff's application for the Court to request *pro bono* counsel without prejudice to Plaintiff's filing another such application at a later date, after Plaintiff has complied with this order. (ECF 4.)

The Court grants Plaintiff leave to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within 60 days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 1:21-CV-9210 (LTS). An amended complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and she cannot show good cause to excuse such failure, the Court will dismiss this action for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

The Court directs the Clerk of Court to mail a copy of this order to Plaintiff and note service on the docket.

SO ORDERED.

Dated:   November 19, 2021
         New York, New York

                                            /s/ Laura Taylor Swain
                                            LAURA TAYLOR SWAIN
                                            Chief United States District Judge